COMMONWEALTH *vs.* ROBERT R. PINA.

No. 07-P-313.

Bristol. March 5, 2008. - May 1, 2008.

Present: GREEN, GRAHAM, & GRAINGER, JJ.

Further appellate review granted, 451 Mass. 1108 (2008).

*Constitutional Law,* Search and seizure, Probable cause. *Search and Seizure,* Affidavit, Probable cause. *Probable Cause.*

A Superior Court judge erred in granting the criminal defendant's motion to suppress drugs and related evidence seized from his apartment pursuant to a search warrant, where the affidavit accompanying the search warrant set forth sufficient facts to establish the necessary nexus between the defendant's illegal activity and his residence — in particular, the observation of the defendant departing from his apartment immediately after receiving a telephone call from a confidential police informant and traveling directly to the location of a controlled purchase, consistent with the method followed in the informant's prior purchases and described by the affiant police officer as typical of a drug delivery service. [655-659] GRAHAM, J., dissenting.

INDICTMENT found and returned in the Superior Court Department on March 3, 2006.

A pretrial motion to suppress evidence was heard by *David A. McLaughlin,* J.

An application for leave to prosecute an interlocutory appeal was allowed by *John M. Greaney,* J., in the Supreme Judicial Court for the county of Suffolk, and the appeal was transferred by him to the Appeals Court.

*David J. Gold,* Assistant District Attorney, for the Commonwealth.

*Elizabeth Doherty* (*Douglas J. Darnbrough* with her) for the defendant.

GREEN, J. On January 18, 2006, New Bedford police officers executed a search warrant for the defendant's residence at 984

Sharon Street, apartment L.[1] From the apartment, police seized 212 grams of cocaine, $1,650 in cash, a quantity of marijuana, and various other instrumentalities of the drug trade.

Following his indictment on charges of trafficking in cocaine in excess of 200 grams, the defendant moved to suppress the evidence seized from his apartment. A Superior Court judge concluded that the affidavit submitted in support of the search warrant application failed to furnish probable cause to search the apartment and suppressed the items seized. A single justice of the Supreme Judicial Court granted the Commonwealth's application for leave to prosecute an interlocutory appeal of the suppression order and transferred the case to this court. We reverse the order suppressing the evidence seized from the apartment.

*Background.* Our inquiry into the sufficiency of a search warrant application "begins and ends with the 'four corners of the affidavit.' " *Commonwealth* v. *O'Day*, 440 Mass. 296, 297 (2003), quoting from *Commonwealth* v. *Villella*, 39 Mass. App. Ct. 426, 428 (1995). As set forth in the affidavit of Detective Bryan Safioleas, a member of the New Bedford police department's organized crime intelligence bureau, the facts are as follows.

In November, 2005, a confidential informant told Safioleas that the informant purchased cocaine from the defendant on an ongoing basis. The informant identified the defendant from a photograph as the seller in those purchases. The informant also stated a belief that the defendant lived at 984 Sharon Street in New Bedford with his girlfriend, that the defendant drove a green Lincoln Mark VII automobile with Massachusetts registration 2044FY, and that the informant had seen the defendant with a woman driving a red GMC Envoy vehicle, Massachusetts registration 5123ND. Safioleas's subsequent investigation revealed that the Lincoln was registered to the defendant, and that the GMC Envoy was registered to Jessica Dwelly. Records of a utility company established that Dwelly was billed for the utilities at 984 Sharon Street, and the building manager confirmed that Dwelly and her boyfriend, the defendant, lived together at the premises.

The informant told Safioleas that, in order to purchase cocaine

---

[1] The defendant does not contest the validity of a second search warrant issued for his car.

from the defendant, the informant would call a telephone number provided by the defendant, and the defendant would then designate a time and location at which the two would meet for the transaction. Safioleas conducted surveillance of 984 Sharon Street and observed the defendant entering and exiting the address on numerous occasions throughout the day and night. On one occasion, Safioleas saw the defendant use a key to enter the GMC Envoy, remove "some items" from it, and take them into 984 Sharon Street. Within three days prior to the warrant application, Safioleas arranged a controlled purchase from the defendant by the informant. The informant telephoned the defendant to arrange a cocaine purchase, and was instructed by the defendant to meet him at a predetermined location. A second detective observed the defendant leave the apartment at 984 Sharon Street after receiving the call, and drive in the Lincoln directly to the designated location. Safioleas observed the defendant and the informant meet and then separate. After the transaction, the informant turned over to Safioleas the cocaine purchased from the defendant. Field testing confirmed the substance to be cocaine.

*Discussion.* The Fourth Amendment to the United States Constitution and art. 14 of the Massachusetts Declaration of Rights require that search warrants issue only upon probable cause. *Commonwealth* v. *Valerio*, 449 Mass. 562, 566 (2007). "The central inquiry is whether the affidavit accompanying the search warrant sets forth probable cause to believe that the drugs or related evidence from the drug delivery service are likely to be found at the defendant['s] residence." *Commonwealth* v. *Luthy*, 69 Mass. App. Ct. 102, 105 (2007). "[T]he information in the affidavit must be adequate to establish a timely nexus between the defendant and the location to be searched and to permit the determination that the particular items of criminal activity sought reasonably could be expected to be found there." *Ibid.*, quoting from *Commonwealth* v. *Gallagher*, 68 Mass. App. Ct. 56, 59 (2007).

"The connection between the items to be seized and the place to be searched does not have to be based on direct observations; it may be found by looking at the type of crime, nature of the items, the suspect's opportunity to conceal items, and infer-

ences as to where the items are likely to be hidden." *Commonwealth* v. *Olivares*, 30 Mass. App. Ct. 596, 600 (1991). Such inferences may include "normal inferences as to where a criminal would be likely to hide the drugs he sells." *Commonwealth* v. *Luthy*, *supra* at 106, quoting from *Commonwealth* v. *O'Day*, 440 Mass. at 302. Indeed, even at trial, where the standard of proof is considerably higher, such inferences need only be reasonable and possible, and not necessary or inescapable. See *Commonwealth* v. *Beckett*, 373 Mass. 329, 341 (1977). "In reviewing the affidavit, we are mindful that it 'should be read as a whole, not parsed, severed, and subjected to hypercritical analysis.' " *Commonwealth* v. *Luthy*, *supra*, quoting from *Commonwealth* v. *O'Day*, *supra* at 301. By the same token, probable cause to believe a person is guilty of a crime does not, without more, create probable cause to search his residence. See *Commonwealth* v. *Olivares*, *supra*. Accordingly, the fact that a drug dealer resides at a particular residence is insufficient to establish probable cause to search that residence, absent other evidence or permissible inferences that tie the defendant's residence to his illegal drug activity. *Ibid.* However, the possibility that another location could be used to store a dealer's drug supply does not negate the likelihood that his residence may be so used. See *Commonwealth* v. *O'Day*, *supra* at 303 & n.7 (rejecting argument that dealer may have stored drugs at bar where sales occurred). Compare *Commonwealth* v. *Stegemann*, 68 Mass. App. Ct. 292, 301 (2007) (evidence of other locations used for storage, and no evidence pointing to storage in residence).

The defendant argues that the affidavit did not set forth sufficient facts to establish the necessary nexus between the defendant's illegal activity and his residence, because police only observed the defendant leaving his apartment to make a drug sale on one occasion.[2] We do not view the fact of driving from his apartment in myopic isolation, however. "Although the fact that an individual on one occasion drives directly from his residence to a drug transaction does not, by itself, establish

---

[2]The defendant does not challenge the informant's reliability or basis of knowledge. See *Commonwealth* v. *Upton*, 394 Mass. 363, 374-375 (1985), citing *Aguilar* v. *Texas*, 378 U.S. 108 (1964), and *Spinelli* v. *United States*, 393 U.S. 410 (1969).

probable cause to search his residence, . . . it may, with additional evidence . . . link a defendant's drug-selling activity to his residence" (citation omitted). *Commonwealth* v. *Hardy*, 63 Mass. App. Ct. 210, 213 (2005). The affidavit in the present case furnishes such additional evidence, revealing that (i) the confidential informant had engaged in a number of prior purchases from the defendant; (ii) in those prior purchases, the informant and the defendant followed a common method in which the informant called a specified telephone number, the defendant specified a location at which the informant should meet the defendant, and the two would thereafter meet at the location for the purpose of consummating the sale; (iii) on the occasion of the controlled purchase arranged by police, the informant followed the same practice, and police observed the defendant leave his apartment upon receiving the informant's call and drive directly to the location of the controlled purchase; (iv) police surveillance and investigation had established that the defendant resided in the apartment; and (v) the affiant police officer (with considerable experience in the methods and practices of drug delivery services) expressed his awareness that such services operate in the manner described in the affidavit for the purpose of keeping drug sales and deliveries away from the location at which the drugs are stored.

The present case is distinguishable from those on which the defendant relies, in which the evidence was inadequate to support probable cause. Unlike the circumstances in *Commonwealth* v. *Smith*, 57 Mass. App. Ct. 907, 908 (2003), the facts in the affidavit here are not limited to a single occasion on which the defendant proceeded from his residence to the location of a drug sale, but include a method of drug delivery described by the confidential informant, corroborated by police observation of a sale consistent with that method originating from the defendant's residence.[3] See *Commonwealth* v. *Hardy*, 63 Mass. App. Ct. at 213 (informant's description of dealer's method of operation

---

[3]We also note that *Commonwealth* v. *Smith*, 57 Mass. App. Ct. at 908, which relied heavily on our opinion in *Commonwealth* v. *O'Day*, 56 Mass. App. Ct. 833 (2002), was decided prior to the opinion of the Supreme Judicial Court, which reached a contrary conclusion. See *Commonwealth* v. *O'Day*, 440 Mass. at 304. See also *Commonwealth* v. *Luthy*, 69 Mass. App. Ct. at 108-109.

may furnish context for controlled purchase in which dealer travels directly from residence to point of sale); *Commonwealth* v. *Luthy*, 69 Mass. App. Ct. at 109.[4] See also *Commonwealth* v. *Alcantara*, 53 Mass. App. Ct. 591, 593-594 (2002). Similarly inapposite is *Commonwealth* v. *Stegemann*, 68 Mass. App. Ct. at 301, in which the only rational inferences one could draw from the facts as recited in the affidavit pointed to storage locations other than the defendant's residence, and nothing suggested the residence as a potential storage location.

In the present case, the defendant's apartment and his car were the most likely storage locations for the defendant's drug delivery and sales operation. Though either the apartment or the car conceivably could serve as a storage location, as earlier observed a permissible inference supporting probable cause "need only be reasonable and possible; it need not be necessary or inescapable." *Commonwealth* v. *Beckett*, 373 Mass. at 341. Taking the information set forth in the affidavit as a whole, and considering the reasonable inferences the magistrate may draw from them, there was probable cause to believe that drugs would be found in either the defendant's car or his apartment, or both. In particular, the observation of the defendant departing from his apartment immediately after receiving a telephone call from the informant and traveling directly to the location of the controlled purchase, consistent with the method followed in the informant's prior purchases and described by Safioleas as typical of a drug delivery service, was sufficient to establish the requisite nexus between the defendant's illegal drug sales and the apartment.

---

[4]The defendant seeks to distinguish *Commonwealth* v. *Luthy*, *supra*, on the ground that the evidence in that case included prior arrests of the defendant for distribution of unlawful drugs, *id.* at 108 n.9, and the fact that the controlled purchase involved a large quantity of cocaine, *id.* at 107. However, the defendant's prior arrests are probative only of his criminality, and do not tie his activity to his residence. See *Commonwealth* v. *Olivares*, 30 Mass. App. Ct. at 600. The amount of drugs involved is to some extent probative of their likely storage location, but it is not in our view determinative. In any event, our holding in the *Luthy* decision rested principally on the fact that, as in the present case, the controlled purchase was consistent with the method of operations described by the informant, making the observations of that purchase corroborative of a general pattern of operations rather than an isolated occurrence. See *Commonwealth* v. *Luthy*, 69 Mass. App. Ct. at 109.

The order allowing the motion to suppress evidence found in the search of the apartment is reversed, and the case is remanded for further proceedings in the Superior Court.

*So ordered.*

GRAHAM, J. (dissenting). In evaluating the defendant's argument that probable cause did not exist for the issuance of a search warrant of his apartment, "our inquiry as to the sufficiency of the search warrant application always begins and ends with the 'four corners of the affidavit.'" *Commonwealth* v. *O'Day*, 440 Mass. 296, 297 (2003), quoting from *Commonwealth* v. *Villella*, 39 Mass. App. Ct. 426, 428 (1995). "The affidavit in its entirety must present a 'substantial basis' to conclude that drugs or other drug paraphernalia will be found in the defendant's residence." *Commonwealth* v. *Stegemann*, 68 Mass. App. Ct. 292, 299 (2007), quoting from *Commonwealth* v. *Donahue*, 430 Mass. 710, 715 (2000). "Strong reason to suspect [that contraband will be found there] is not adequate." *Commonwealth* v. *Upton*, 394 Mass. 363, 370 (1985). I am constrained to agree with the defendant that the affidavit of Detective Safioleas failed to present such a substantial basis or permit a determination that drugs and related paraphernalia and records would probably be located at the defendant's residence. Accordingly, I dissent.

While Safioleas's affidavit provided ample probable cause for the arrest of the defendant for ongoing drug dealing activity, it did not contain sufficiently particularized information connecting the defendant's apartment to his illegal drug activities, other than the fact that he lived at those premises. Based on the affidavit, the defendant sold drugs in unspecified amounts over an unspecified period of time to a confidential police informant. The informant telephoned the defendant seeking drugs, and the defendant gave the informant a location away from the apartment where the transaction would occur. The fact that the defendant was at home when he received the telephone call for the single controlled purchase, and necessarily had to leave his home to make the sale, fails logically to provide a sufficient link of the defendant's residence to drug activity. See *Com-*

*monwealth* v. *Olivares*, 30 Mass. App. Ct. 596, 600 (1991) (no specific information in affidavit tying defendant's residence to illegal drug transactions, other than that he lived at those premises); *Commonwealth* v. *Laughlin*, 40 Mass. App. Ct. 926, 926 (1996) (no evidence in affidavit other than that defendant was drug dealer who lived at residence searched); *Commonwealth* v. *Smith*, 57 Mass. App. Ct. 907, 908 (2003); *Commonwealth* v. *Stegemann*, 68 Mass. App. at 300.

Nothing in the affidavit suggests that drugs would be found in the defendant's apartment three days after the controlled purchase that took place at a location away from the apartment. The circumstances here are distinguishable from the cases in which police were able to corroborate their suspicions that the defendant kept illegal drugs in his residence. See, e.g., *Commonwealth* v. *O'Day*, 440 Mass. at 303-304 (probable cause to search defendant's home was warranted given value and quantity of drugs that defendant sold each evening, frequency of visitors to his home, and signs at defendant's home warning unwanted visitors from entering); *Commonwealth* v. *Luthy*, 69 Mass. App. Ct. 102, 104, 106-107 (2007) (magistrate could infer that defendant had illegal drugs in his residence where affidavit disclosed that defendant [1] regularly sold cocaine to a confidential informant, [2] sold cocaine on "a steady basis" to others, [3] was able to provide large quantities of cocaine, [4] had been arrested for and was currently under investigation for illegal narcotic sales, and [5] engaged in two controlled drug transactions with the confidential informant, the second transaction within forty-eight hours of preparation of affidavit, involving a "large amount" of a white powdery substance containing cocaine).

Consequently, the police lacked probable cause to search the defendant's residence, and his motion to suppress the evidence seized therefrom was properly allowed.