## Commonwealth *vs*. Shawn Dillon.

No. 10-P-249.

Middlesex. December 14, 2010. - April 15, 2011.

Present: Mills, Grainger, & Fecteau, JJ.

*Controlled Substances. Constitutional Law,* Search and seizure, Harmless error. *Search and Seizure,* Warrant, Affidavit, Probable cause. *Probable Cause. Error, Harmless. Practice, Criminal,* Harmless error.

A Superior Court judge erred in denying the criminal defendant's pretrial motion to suppress evidence seized from one of his residences pursuant to a search warrant, where the affidavit accompanying the application for the warrant did not set forth particularized facts of a substantial and timely nexus between that residence and the defendant's drug-selling activities sufficient to establish probable cause to search the residence [294-297]; moreover, the admission of the evidence seized was not harmless beyond a reasonable doubt, where the Commonwealth introduced the evidence recovered during the search, where that evidence powerfully undermined the premise of the defense, and where the Commonwealth highlighted the evidence with expert testimony and in closing argument [297-299].

Indictments found and returned in the Superior Court Department on March 6, 2008.

A pretrial motion to suppress evidence was heard by *Hiller B. Zobel*, J., and the cases were tried before him.

*Steven J. Rappaport* for the defendant.

*Lisa A. Monahan*, Assistant District Attorney, for the Commonwealth.

Mills, J. The defendant appeals his convictions of various drug offenses, arguing (1) his motion to suppress was erroneously denied, and (2) *Melendez-Diaz* v. *Massachusetts*, 129 S. Ct. 2527 (2009), requires reversal of his conviction of trafficking in oxycodone. Because we agree that the judge should have

allowed the motion to suppress, we vacate all but one of the defendant's convictions.[1]

1. *Background.* On April 20, 2007, a Lowell police officer applied for four search warrants, one each for a residence on Angle Street in Lowell, a residence on Lantern Lane in Billerica, and two vehicles registered to the defendant. The warrants issued, and police officers executed them on April 21, 2007. Read as a whole, *Commonwealth* v. *Donahue*, 430 Mass. 710, 715 (2000), the single affidavit supporting the application for the four warrants narrates the following.

The Lowell police department investigated the defendant's drug-selling activity throughout March and April of 2007. A confidential informant[2] provided information about illicit oxycodone sales by the defendant from a residence on Angle Street in Lowell. Sometime after April 13, 2007, the confidential informant, at the request of the Lowell police officer, conducted a controlled purchase of oxycodone from the defendant at the Angle Street residence. The controlled purchase took place as planned, leading to the identification of the defendant, his automobile, and his telephone number.

The Lowell police also obtained information by liaising with the Billerica police department. The Billerica police had received information from a second, unnamed confidential informant[3] that the defendant distributed oxycodone using removable magnetized containers hidden under the hood of his vehicle. Based on this information, the Billerica police began surveilling an address on Talbot Avenue in Billerica during December, 2006. On one occasion, a police detective observed the defendant arrive at the Talbot Avenue address and remove a container from under the hood of his vehicle. Although the detective stated that the defendant's "body language was consistent with

[1]Because we conclude that the judge should have allowed the motion to suppress, we do not address the defendant's *Melendez-Diaz* claim with respect to the trafficking conviction.

[2]The affiant qualified this informant, "CIA," as "a known and admitted drug user who is familiar with the methods of packaging and distribution of illicit narcotics in the Greater Lowell Area." See *Commonwealth* v. *Upton*, 394 Mass. 363, 369-377 (1985).

[3]The affiant made no attempt to qualify this confidential informant. See *Commonwealth* v. *Upton, supra.*

that of a person secreting or removing an item(s) from under the hood of the vehicle," there was no evidence as to the contents of the container.

The Billerica police subsequently received information from a third confidential informant[4] on March 1, 2007. This informant, "Wizard," provided the Billerica police with the defendant's address on Lantern Lane in Billerica. Wizard also described the defendant's drug-selling operations from the Lantern Lane address, stating that customers come to the address during the morning hours while the defendant makes deliveries of oxycodone later in the day. Finally, Wizard corroborated the defendant's method of using containers under the hood of his vehicle to hide narcotics.

Upon request by the Lowell police officer, the Registry of Motor Vehicles (registry) verified that the vehicle observed as the defendant's at the Angle Street address was registered to the defendant at the Lantern Lane address. Registry files also identified another vehicle registered to the defendant at that address.

Finally, the affiant recited his training and experience during his eight years as a Lowell police officer and, on this basis, the affiant identified certain common practices employed by individuals involved in the drug trade, including separation of narcotics from proceeds and records by storage at different locations. Based on his understanding of these practices, the affiant stated his belief that he would find proceeds and records from the defendant's drug-selling activity in the Lantern Lane residence. The affiant did not seek to search the Lantern Lane residence for oxycodone or any other drugs.

The warrants then issued for both addresses and both vehicles. On April 21, 2007, the Lowell police executed two warrants at the Angle Street address (one was for one of the vehicles), and

---

[4]The affiant qualified this confidential informant as a "past RELIABLE Confidential Informant . . . [who] has provided assistance with identifying and targeting Drug Dealers and was therefore 'signed up' by the Billerica Police Department, who keep[s] a Confidential File on this Informant." This informant, the affiant further recited, "has provided reliable corroborated Drug INTEL in the past . . . [and] actively participated in 'Controlled-Buy Operations' conducted by the Billerica Police." The affiant also referred to laboratory confirmations that the substances this informant obtained in prior controlled purchases were controlled substances and to a Billerica police report documenting this informant's assistance. See *Commonwealth* v. *Upton, supra.*

the Billerica police executed the remaining two warrants at the Lantern Lane address (again, one was for a vehicle).

At Angle Street, the Lowell police encountered the defendant and secured him after he appeared to attempt to ingest narcotics. The defendant had on his person a hollow lip balm container with nine oxycodone tablets inside. The subsequent search of the home yielded an additional eighty-four tablets of oxycodone, eighty-six tablets of morphine, small amounts of suboxone (buprenorphine) and methadone, and $1,149 in cash.

At Lantern Lane, the Billerica police found a safe hidden in the floor of the defendant's bedroom closet. A search of the safe uncovered evidence of narcotics trafficking, including paper records, a device for detecting counterfeit currency, and approximately $23,000 in cash in bundles of $1,000 each. Elsewhere in the house, the police found additional money and five cellular telephones. Five tablets of suboxone were in the safe and the bedroom, but the police found no other narcotics. A firearm also was discovered.

The defendant was charged with trafficking in oxycodone (over fourteen grams), G. L. c. 94C, § 32E(*c*)(1); possession of oxycodone with intent to distribute, G. L. c. 94C, § 32A(*a*); possession of morphine with intent to distribute, G. L. c. 94C, § 32A(*a*); school zone violations, G. L. c. 94C, § 32J; two counts of possession of suboxone (buprenorphine), G. L. c. 94C, § 34; and improper storage of a firearm, G. L. c. 140, § 131L(*a*)-(*b*). He pleaded guilty to the firearm charge and was tried on the narcotics charges.

Before trial, the defendant moved to suppress the evidence recovered from the Lantern Lane address based on inadequacies in the search warrant affidavit. The judge denied the motion, concluding that the warrant satisfactorily stated the confidential informants' reliability and made out a sufficient nexus between the defendant's alleged drug-selling activity and the Lantern Lane residence.

The jury found the defendant guilty on all charges. He appeals, arguing (1) his motion to suppress should have been allowed because the affidavit supporting the application for a search warrant did not establish a sufficient nexus between the

defendant's drug activity and his Lantern Lane residence,[5] and (2) *Melendez-Diaz* requires reversal of his conviction of trafficking in oxycodone.

2. *Motion to suppress.* We determine whether the search warrant application establishes probable cause exclusively within the four corners of the affidavit. See *Commonwealth* v. *Connolly*, 454 Mass. 808, 813 (2009). The judge concluded that the search warrant affidavit established a nexus between the defendant's drug-selling activity and the Lantern Lane residence sufficient to establish probable cause to search. We disagree.

The Fourth Amendment to the United States Constitution and art. 14 of the Massachusetts Declaration of Rights require that warrants issue only on probable cause. In order to establish probable cause, "[a]n affidavit must contain enough information for an issuing magistrate to determine that the items sought are related to the criminal activity under investigation, and that they reasonably may be expected to be located in the place to be searched at the time the search warrant issues." *Commonwealth* v. *Cinelli*, 389 Mass. 197, 213, cert. denied, 464 U.S. 860 (1983). "[T]he affidavit should be read as a whole, not parsed, severed, and subjected to hypercritical analysis." *Commonwealth* v. *O'Day*, 440 Mass. 296, 301 (2003), quoting from *Commonwealth* v. *Blake*, 413 Mass. 823, 827 (1992).

Specifically, when the target of a search is a residence where drug-selling activity is reported, the affidavit must present "a sufficient nexus between the defendant's drug-selling activity and his residence to establish probable cause to search the residence." *Id.* at 304. This nexus must be both substantial and timely. See *Cinelli*, 389 Mass. at 213.

"[P]robable cause to expect that drugs will be present in a home is not established by the fact that the defendant lives there." *Commonwealth* v. *Pina*, 453 Mass. 438, 441 (2009). In particular, a search warrant affidavit for a residence that provides "ample probable cause to [arrest the defendant] for ongoing drug dealing activity" must still "contain sufficiently particularized information connecting [the defendant's] apartment to his

---

[5]The defendant does not challenge the adequacy of the affidavit with regard to the Angle Street residence or his two vehicles.

illegal drug activities." *Commonwealth* v. *Stegemann*, 68 Mass. App. Ct. 292, 300 (2007).

We note at the outset that the affidavit contains ample evidence for an issuing magistrate to infer that the defendant engaged in ongoing oxycodone sales. The specific facts recited in the affidavit also establish a sufficient nexus between this activity, the Angle Street residence, and the two vehicles registered in the defendant's name.[6]

But the affidavit lacked sufficient particularized facts to establish a nexus between the defendant's drug-selling activity and the Lantern Lane residence. Neither the registry records listing the defendant's address as the Lantern Lane residence nor the Lowell police officer's statement of belief that the defendant conformed his behavior to a standard drug trade practice constitute sufficiently specific facts to create probable cause to search the Lantern Lane residence. See *Pina*, 453 Mass. at 442 (neither information that defendant's actions are consistent with standard drug industry practices nor evidence that defendant lived at his residence is particularized information); *Commonwealth* v. *Bookman*, 77 Mass. App. Ct. 546, 550 (2010) (same).

The only particularized information connecting the Lantern Lane residence to the defendant's drug-selling operation was Wizard's statement that customers came to the Lantern Lane address to purchase oxycodone and that the defendant delivered oxycodone from the residence. Wizard also gave more specific information that the defendant "keeps" these drugs "in a container underneath the hood of his vehicle," not inside the house. Wizard provided no information about records or proceeds of drug-selling activity nor any information about the defendant storing narcotics inside the Lantern Lane residence. The information supplied by Wizard therefore only corroborated the already established nexus between the defendant's drug-selling activity and his vehicles.

---

[6]This evidence includes the controlled purchase at the Angle Street residence, the police observation of the defendant's method of secreting narcotics in a magnetized container underneath the hood of his vehicles, and the information from confidential informants about specific elements of the defendant's drug-selling operation.

This interpretation of Wizard's information is not impermissibly hypercritical, see *O'Day*, 440 Mass. at 301, because the affiant interpreted the information supplied by Wizard similarly. The affiant sought from the Lantern Lane residence (1) monies and proceeds, (2) drug distribution and sale paraphernalia, and (3) drug distribution and sale records. The affiant pointedly did not seek to search the Lantern Lane residence for oxycodone or any other narcotics.

The affiant identified no other corroborating information that would have established a nexus between the defendant's drug-selling activity and the Lantern Lane residence. Nor did any of the confidential informants other than Wizard supply such corroborating information. Neither the Lowell nor Billerica police conducted surveillance or controlled purchase operations at the Lantern Lane address. Contrast *Commonwealth* v. *Young*, 77 Mass. App. Ct. 381, 387-388 (2010) (four controlled purchases, with defendant observed leaving his apartment before each transaction, proceeding straight to location of controlled purchases, and returning directly to his apartment after each sale).

Nor is this a case where the affiant recited "[a] pattern of repeated activity giving rise to a reasonable inference that a dealer's residence is being used as the base for his drug operation." *Commonwealth* v. *Escalera*, *ante* 262, 266 (2011). In *Escalera*, the affiant described two direct observations of the defendant leaving his residence immediately before driving to suspected drug sales, driving back from the drug sales, and secretly placing or retrieving items from the engine compartment of one of his automobiles. *Id.* at 266-267. In contrast, the affidavit here included no reference to even one direct observation, either by police officers or confidential informants, of the defendant entering or leaving the Lantern Lane residence before or after a drug transaction or before or after secretly accessing the engine compartment of one of his vehicles. The affiant, therefore, recited no pattern of activity at the Lantern Lane residence similar to the pattern held sufficient to establish probable cause in *Escalera*.

Additionally, the lapse of time between the Billerica police's receipt of Wizard's information and the application for the search warrant, more than seven weeks, "raises further concerns." *Pina*, 453 Mass. at 442 (three-day lapse between observa-

tion and warrant application raises concerns). Although the affiant described activity demonstrating continuous drug-selling operations involving the Angle Street residence and the two vehicles, see *Commonwealth* v. *Matias,* 440 Mass. 787, 793 (2004), no particularized information established a timely nexus between the drug-selling operations and the Lantern Lane residence.

The search warrant affidavit accordingly did not set forth adequate particularized evidence to establish a substantial and timely nexus between the defendant's drug-selling activity and the Lantern Lane residence sufficient to establish probable cause to search the Lantern Lane residence. See *Stegemann,* 68 Mass. App. Ct. at 300. Contrast *Cinelli,* 389 Mass. at 213; *O'Day,* 440 Mass. at 304. Although we recognize the closeness of the question, on these facts the defendant's motion to suppress evidence returned from the search of the Lantern Lane residence should have been allowed, and the evidence should have been suppressed.[7]

3. *Prejudice.* The Commonwealth argues that the defendant's convictions should stand even if the judge should have allowed the motion to suppress. We disagree.

A conviction may stand despite the introduction of evidence that should have been suppressed if "the erroneous admission of that evidence was 'harmless beyond a reasonable doubt.' " *Commonwealth* v. *Tyree,* 455 Mass. 676, 700 (2010), quoting from *Chapman* v. *California,* 386 U.S. 18, 24 (1967). "[T]o establish harmlessness beyond a reasonable doubt, the Commonwealth must show that other properly admitted evidence of guilt is 'overwhelming,' in the sense that it is 'so powerful as to "nullify any effect" ' that the improperly admitted evidence 'might have had' on the fact finder or the findings." *Commonwealth* v. *Vasquez,* 456 Mass. 350, 362 (2010), quoting from *Tyree,* 455 Mass. at 704 n.44.

This standard requires more exacting review than the less

---

[7]Because we conclude that the affidavit, including the information supplied by the three confidential informants, did not establish a sufficient nexus between the defendant's drug-selling activity and the Lantern Lane residence, we need not decide whether the affidavit adequately established the informants' veracity and bases of knowledge in accordance with *Commonwealth* v. *Upton,* 394 Mass. at 369-377.

rigorous standard of *Commonwealth* v. *Latimore*, 378 Mass. 671, 677-678 (1979). *Commonwealth* v. *Dagraca*, 447 Mass. 546, 555 (2006). Factors bearing on the tainted evidence's contribution to the jury's verdicts include "the importance of the evidence in the prosecution's case; the relationship between the evidence and the premise of the defense; who introduced the issue at trial; the frequency of the reference; whether the erroneously admitted evidence was merely cumulative of properly admitted evidence; the availability or effect of curative instructions; and the weight or quantum of evidence of guilt." *Id.* at 553.

Here, the defendant contested the trafficking and possession of narcotics with intent to distribute charges by claiming that he possessed large quantities of narcotics for personal use due to his oxycodone addiction. The defendant presented evidence that a person addicted to oxycodone could consume up to nine pills in one day, making the quantity recovered from the defendant's possession only about one week's supply for a person sufficiently addicted. The defendant also presented evidence that the defendant's possession of suboxone and methadone, substances used to treat the symptoms of withdrawal from opiates such as oxycodone, corroborated his defense as consistent with attempted treatment for an oxycodone addiction.

In light of the defendant's theory, the evidence recovered from the Lantern Lane residence powerfully undermined the premise of the defense. Indeed, the Commonwealth highlighted this evidence by calling Louis Cherubino, a Cambridge police detective not involved with this investigation or prosecution, as an expert witness to testify about the consistency of the evidence against the defendant with standard drug-selling practices.

Cherubino testified that the evidence found at the Lantern Lane residence "definitively" affected his opinion that the defendant intended to distribute the narcotics found in his possession. Moreover, Cherubino testified that the packaging of the money, in bundles of $1,000, was "more consistent with distribution than just simple possession." Cherubino testified similarly about the recovery of the magnetized container and the presence of a safe containing this evidence at the Lantern Lane residence.

Finally, the prosecutor highlighted Cherubino's testimony in closing argument. She cited his testimony about the packaging of the money found at the Lantern Lane residence, in $1,000 bundles, as consistent with the defendant's involvement in the narcotics business. She further argued that the large cash sum and the defendant's maintenance of two residences was much more consistent with a seller of narcotics than a person addicted to them.

Because the Commonwealth introduced the evidence seized from the Lantern Lane residence and highlighted it with expert testimony and in closing argument, and because the evidence strongly contradicted the premise of the defense, we must conclude that it was not harmless beyond a reasonable doubt.

4. *Conclusion.* The judgments on the trafficking, possession with intent to distribute, and school zone violation indictments are vacated and the verdicts set aside. Because there was ample evidence of the lesser included offenses of simple possession of oxycodone, morphine, and suboxone found in the Angle Street residence, the Commonwealth, on remand, may move for sentencing on these lesser included offenses or seek to retry the defendant on the trafficking, possession with intent to distribute, and school zone violation indictments. See *Commonwealth* v. *Kastner*, 76 Mass. App. Ct. 131, 141 (2010); *Commonwealth* v. *Montalvo*, 76 Mass. App. Ct. 319, 331-332 (2010). The judgment on the indictment charging the defendant with possession of suboxone found in the Lantern Lane residence is vacated, the verdict set aside, and a new judgment is to enter dismissing that indictment. The judgment on the other indictment charging the defendant with possession of suboxone is affirmed. The matter is remanded to Superior Court for further consistent proceedings.

*So ordered.*