## Commonwealth vs. Robert R. Pina.

Bristol. December 2, 2008. - March 19, 2009.

Present: Marshall, C.J., Ireland, Spina, Cowin, Cordy, & Botsford, JJ.

*Constitutional Law,* Search and seizure, Probable cause. *Search and Seizure,* Affidavit, Probable cause. *Probable Cause.*

A Superior Court judge did not err in granting a criminal defendant's pretrial motion to suppress cocaine, marijuana, cash, and other items seized by police officers during a search of the defendant's apartment, where the affidavit in support of the search warrant failed to establish a nexus between the defendant's drug activity and his residence, as the only particularized information contained in the affidavit connecting the defendant's observed drug activity with his apartment was a single (and untimely) observation of the defendant driving from the apartment to a location where he sold an unspecified quantity of cocaine to a police informant. [440-443] Cordy, J., dissenting, with whom Cowin, J., joined.

Indictment found and returned in the Superior Court Department on March 3, 2006.

A pretrial motion to suppress was heard by *David A. Mc-Laughlin,* J.

After review by the Appeals Court, the Supreme Judicial Court granted leave to obtain further appellate review.

*Elizabeth Doherty* (*Douglas J. Darnbrough* with her) for the defendant.

*David J. Gold,* Assistant District Attorney, for the Commonwealth.

Ireland, J. A Superior Court judge allowed the defendant's motion to suppress cocaine, marijuana, cash, and other items seized by police officers during a search of the defendant's apartment, based on his conclusion that the affidavit on which the search was based contained insufficient facts to establish probable cause to believe that drugs would be found therein. A single justice of this court granted the Commonwealth's application for leave to pursue an interlocutory appeal, and the Appeals Court

reversed the judge's decision. *Commonwealth* v. *Pina*, 71 Mass. App. Ct. 653, 654 (2008). We granted the defendant's application for further appellate review. Because we agree with the judge that the affidavit supporting the search fails to establish a nexus between the defendant's drug activity and his residence, we affirm the order allowing the motion to suppress.

On January 13, 2006, Bryan Safioleas, a detective in the New Bedford police department's organized crime bureau, applied for a search warrant for an apartment at 984 Sharon Street in New Bedford. A magistrate issued the warrant that same day, and the search of the apartment was executed on January 18, 2006. The sole issue in this case is the sufficiency of the affidavit that accompanied the warrant application. Read in its entirety, see *Commonwealth* v. *Donahue*, 430 Mass. 710, 715 (2000); *Commonwealth* v. *James*, 424 Mass. 770, 777-778 (1997); *Commonwealth* v. *Jean-Charles*, 398 Mass. 752, 757 (1986), the affidavit presents the following facts.

In November, 2005, Safioleas met with a confidential informant regarding a cocaine delivery service being conducted in New Bedford. The informant told Safioleas that he had purchased, and continued to purchase, cocaine from a male known to him as Robert Pina, who, the informant believed, resided in an apartment at 984 Sharon Street. Safioleas confirmed that the person described by the informant was indeed the defendant and the defendant did live at 984 Sharon Street. The informant told Safioleas that, in order to purchase cocaine, the informant would call a telephone number that had been provided by the defendant. The defendant would instruct the informant to meet him at a certain location and at a certain time, at which place and time the drug purchase ultimately would be completed.

Armed with this information, Safioleas orchestrated a controlled purchase of a quantity of cocaine from the defendant. The informant placed a telephone call to the defendant to arrange for the purchase. A second New Bedford police detective observed the defendant leave his apartment and drive directly to the location where the informant had been instructed to proceed. Safioleas observed the defendant and the informant meet briefly and then separate. Safioleas then met the informant at a predetermined location, where the informant delivered to him an unspecified

amount of a substance, later field-tested positive as cocaine, which the informant stated had come from the defendant. Safioleas had maintained constant surveillance of the informant from the informant's initial telephone call to the defendant until Safioleas accepted the cocaine.

An eight-year veteran of the police department, Safioleas had received extensive training and experience in narcotics distribution. As a result of his training and experience, he was familiar with common tactics in the distribution of controlled substances, such as cocaine. One such tactic, generally known to Safioleas and others in law enforcement, is a narcotics delivery service that controls the time and place of each delivery. The affidavit provides the following information. It is common for drug distributors to assign unique meeting and delivery locations to their customers, in order to assist them in identifying the individual who may have provided information to law enforcement officials resulting in their arrest or the issuance of a search warrant. Varying meeting times and locations also makes it difficult for police to establish set patterns and locations for the deliveries and allows drug sales to be conducted away from a dealer's principal residence, where narcotics intended for distribution are concealed. The increased foot and motor vehicle traffic attracted by the sale of narcotics would arouse the suspicions of neighbors or police. In addition, by separating the delivery locations from the narcotics storage location, dealers limit law enforcement opportunities to connect them to the narcotics they distribute.

The drug transaction witnessed by Safioleas took place on January 10, 2006. Three days later, he applied for a warrant to search the defendant's apartment. We now address the merits.

It is established that, in drug cases such as the present one, the affidavit accompanying a search warrant application must contain facts sufficient to demonstrate that there is probable cause to believe that drugs, or related evidence, will be found at the location to be searched. "The affidavit need not convince the magistrate beyond a reasonable doubt, but must provide a substantial basis for concluding that [drugs or instrumentalities of the drug trade] will be found on the specified premises." *Commonwealth* v. *Donahue, supra* at 712. When that location is a residence, there must be specific information in the affidavit, and reasonable

inferences a magistrate may draw, to provide "a sufficient nexus between the defendant's drug-selling activity and his residence to establish probable cause to search the residence." *Commonwealth* v. *O'Day*, 440 Mass. 296, 304 (2003). See generally *Commonwealth* v. *Upton*, 394 Mass. 363, 370 (1985) (basic question is whether magistrate "has a substantial basis for concluding" that article is "probably in the place to be searched. . . . Strong reason to suspect is not adequate").

"Information establishing that a person is guilty of a crime does not necessarily constitute probable cause to search the person's residence." *Commonwealth* v. *Cinelli*, 389 Mass. 197, 213, cert. denied, 464 U.S. 860 (1983). It follows that probable cause to expect that drugs will be present in a home is not established by the fact that the defendant lives there. See *Commonwealth* v. *O'Day*, *supra*; *Commonwealth* v. *Stegemann*, 68 Mass. App. Ct. 292, 299 (2007); *Commonwealth* v. *Chongarlides*, 52 Mass. App. Ct. 366, 370 (2001); *Commonwealth* v. *Laughlin*, 40 Mass. App. Ct. 926, 927 (1996); *Commonwealth* v. *Olivares*, 30 Mass. App. Ct. 596, 600 (1991). In *Commonwealth* v. *Smith*, 57 Mass. App. Ct. 907 (2003), the Appeals Court held that the fact that a defendant drives from his home to the location of a drug transaction, and returns to his home on the transaction's conclusion, with no other facts connecting the residence to drug sales, does not provide probable cause to search the residence. See *id.* at 908. The Appeals Court reasoned: "The 'fundamental flaw' in the affidavit before us is that it does not explain why there was probable cause to believe that drugs or related evidence would be found at [the defendant's home] other than it being the residence of the defendant. . . . The confidential source cited in the affidavit does not indicate any familiarity with the defendant's residence . . . nor does the source claim ever to have been inside [the home]. . . . 'Notably absent [was] reliable specific information from any quarter placing illegal drugs or drug transactions there in the past.'" (Citation omitted.) *Id.*, quoting *Commonwealth* v. *Kaufman*, 381 Mass. 301, 304 (1980). We agree with the Appeals Court's analysis.

Here, the affidavit relates that the defendant lived in an apartment at 984 Sharon Street, that he sold drugs over an unspecified time period to a police informant, and that, on one occa-

sion, he was observed driving from his apartment to a location where he sold cocaine to the informant. There are no specific allegations, or particularized information based on police surveillance or otherwise, that would permit a reasonable inference that the defendant likely kept a supply of drugs in his apartment. In *Commonwealth* v. *O'Day, supra,* police suspicions that the defendant kept drugs at his house were corroborated by details concerning the value and quantity of drugs that defendant sold each evening, the frequency of visitors to his home, and the presence of signs at the defendant's home warning unwanted visitors from entering. See *id.* at 303-304. Here, the affidavit provides no details about the amount and quantity of drugs the defendant had sold in the past, or any other facts tending to demonstrate that the defendant sold drugs from his apartment or that he kept his supply of drugs there. Contrast *Commonwealth* v. *Blake,* 413 Mass. 823, 829 (1992) (affidavit alleged that defendant was selling drugs out of his apartment and that he told informant cocaine was "on hand").

It is generally true that the connection between the items to be seized and the place to be searched does not have to be based on direct observation. Safioleas had considerable experience in the methods and practices of drug delivery services and in his affidavit provided an informative context in which to evaluate the manner in which the defendant conducted the drug sale observed by police. The information, nevertheless, that a defendant's actions may be consistent with a commonly known type of drug delivery service does not, without more, create a sufficient probability that this particular defendant kept a supply of drugs at his home. The only particularized information contained in the affidavit connecting the defendant's observed drug activity with the apartment in which he lived was a single observation of the defendant driving from the apartment to a location where he sold an unspecified quantity of cocaine to the informant. The lapse of time between that observation and the application for the search warrant (three days) raises further concerns. Probable cause to search a particular location for contraband requires a timely, as well as a substantial, nexus to the illegal activity. Consequently, we conclude that the warrant to search the defendant's apartment was not supported by probable cause.

The order allowing the defendant's motion to suppress is affirmed.

*So ordered.*

CORDY, J. (dissenting, with whom Cowin, J., joins). I disagree with the court's conclusion that the affidavit supporting the warrant to search the defendant's apartment failed to establish the requisite nexus between the defendant's drug activity and his residence, and would reverse the allowance of the defendant's motion to suppress.

When reviewing the sufficiency of a search warrant application, "we determine whether, based on the affidavit in its entirety, the magistrate had a substantial basis to conclude that a crime had been committed . . . and that the items described in the warrant were related to the criminal activity and probably in the place to be searched" (citation omitted). *Commonwealth* v. *O'Day*, 440 Mass. 296, 298 (2003). *Commonwealth* v. *Upton*, 394 Mass. 363, 370 (1985). " 'The nexus may be found in "the type of crime, the nature of the missing items, the extent of the suspect's opportunity for concealment, and normal inferences as to where a criminal would be likely to hide" ' the drugs he sells." *Commonwealth* v. *O'Day*, *supra* at 302, quoting *Commonwealth* v. *Cinelli*, 389 Mass. 197, 213, cert. denied, 464 U.S. 860 (1983).

In concluding that the affidavit was insufficient, the court relies principally on *Commonwealth* v. *Smith*, 57 Mass. App. Ct. 907, 908 (2003), in which the Appeals Court stated that "the observations by the police of the defendant driving, either to or from his home, *without more*, established no connection between his home and the controlled buys" (emphasis added). Here there was more.[1] The affidavit in support of the search warrant application includes information that (1) the defendant sold drugs to the informant numerous times in the past; (2) the defendant utilized a common method of operation to consummate those drug sales;

---

[1] In *Commonwealth* v. *Smith*, 57 Mass. App. Ct. 907, 908 (2003), the Appeals Court relied heavily on its earlier decision in *Commonwealth* v. *O'Day*, 56 Mass. App. Ct. 833 (2002), *S.C.*, 440 Mass. 296 (2003), a case in which this court reached a contrary conclusion on further appellate review. See *Commonwealth* v. *Pina*, 71 Mass. App. Ct. 653, 657 n.3 (2008), citing *Commonwealth* v. *O'Day*, *supra* at 304.

(3) the method of operation included taking orders over the telephone and directing the informant to meet him at a certain location and a certain time to complete the transaction; (4) this method of operation was confirmed by the controlled purchase, during which the police saw the defendant leave from an apartment after receiving the call from the informant and drive directly to the location where he instructed the informant to meet him, for the purpose of delivering the drugs; and (5) the police established that the defendant lived in the apartment. The affidavit also included information from the affiant police officer, who was experienced in the methods of operation used by drug delivery services, to the effect that drug delivery services operate in the manner described in the affidavit for the purposes of keeping drug transactions away from the dealer's "principal residence where they store narcotics intended for distribution," and limiting "law enforcement[] opportunities to connect [dealers] to the narcotics they distribute." See *Commonwealth* v. *Pina*, 71 Mass. App. Ct. 653, 657 (2008).

This information, and the normal inferences that can be drawn therefrom, provided the magistrate with a substantial basis from which to conclude that the defendant likely stored drugs and related items in his apartment. Most significantly, the informant's description of the defendant's drug delivery method was corroborated by police observation of a controlled purchase consistent with that method, which originated from the defendant's apartment. See *Commonwealth* v. *Luthy*, 69 Mass. App. Ct. 102, 109 (2007) (finding probable cause where controlled purchases corroborated defendant's usual method of operation, which consisted of delivering drugs away from his residence after receiving telephone calls from buyers); *Commonwealth* v. *Hardy*, 63 Mass. App. Ct. 210, 213 (2005) (finding probable cause in part because of "defendant's pattern of driving directly from his home to drug transactions"). See also 2 W.R. LaFave, Search and Seizure § 3.7(d), at 420-421 (4th ed. 2004) ("[T]here need not be definite proof that the seller keeps his supply at his residence . . . . [I]t will suffice if there are some additional facts . . . which would support the inference that the supply is probably located there").[2] Further, the affiant police officer, based on

---

[2]See, e.g., *United States* v. *Wood*, 879 F.2d 927, 930 (D.C. Cir. 1989)

his relevant experience and expertise, stated that drug delivery services operate in the manner described by the informant (and corroborated by police observation) to keep drug transactions away from the storage location (here, the dealer's residence). See *Commonwealth* v. *Anthony*, 451 Mass. 59, 71-72 (2008), and cases cited (magistrate may rely in part on affiant police officer's experience and expertise when determining whether probable cause exists); 2 W.R. LaFave, *supra* at § 3.2(c), at 40-47 (police officer's experience and expertise may be considered when making probable cause determination). See also *id.* at § 3.7(d), at 421-422 ("it is commonly held that [a] gap can be filled merely on the basis of the affiant-officer's experience that drug dealers ordinarily keep their supply, records and monetary profits at home").[3,4]

---

probable cause to search defendant's house where codefendants "negotiated a drug sale with [undercover detective] by telephone from the . . . house, left the house together, sold cocaine to [the detective], and then returned to the house together"); *State* v. *Sykes*, 412 N.W.2d 578, 583-584 (Iowa 1987) (probable cause to search defendant's residence where defendant engaged in repeated drug sales and police observed defendant travel between home and corner on which he was known to sell). Contrast *Ex parte Perry*, 814 So. 2d 840, 841-843 (Ala. 2001) (no probable cause where affidavit recounted three undercover buys at "neutral location[s]" and affiant stated that dealers often sell at locations away from their "residence and/or 'stash house,' " because affidavit provided no information that defendant ever "came from or went to his residence directly before or directly after any of the drug sales").

[3]See, e.g., *United States* v. *Johnson*, 437 F.3d 69, 71-72 (D.C. Cir. 2006), quoting *United States* v. *Thomas*, 989 F.2d 1252, 1254 (D.C. Cir. 1993) (affidavit sufficient where expert testimony provides that in affiant's experience, "drug dealers frequently keep business records, narcotics, proceeds from sales, and firearms in their houses"); *United States* v. *Reddrick*, 90 F.3d 1276, 1281 (7th Cir. 1996), quoting *United States* v. *Lamon*, 930 F.2d 1183, 1188 (7th Cir. 1991) ("in the case of drug dealers evidence is likely to be found where the dealers live"); *United States* v. *Pitts*, 6 F.3d 1366, 1369 (9th Cir. 1993) (same). This inference is only permissible, however, if "the affidavit provides factors establishing that the defendant was a drug dealer as opposed to someone in possession of drugs for personal use." 2 W.R. LaFave, Search and Seizure § 3.7(d), at 422 n.169 (4th ed. 2004). The controlled purchase in this case established that the defendant was a drug seller as opposed to a purchaser.

[4]Although the officer's statements about drug delivery services bolster the inference that the defendant probably stored drugs and related items in his apartment, I do not consider these statements necessary to a finding of probable cause in light of all of the other facts set forth in the affidavit. Thus, in my view, the affidavit in this case was more than sufficient to establish the requisite nexus between the defendant's drug activity and his apartment.

The other cases on which the court relies are not to the contrary. The court cites *Commonwealth* v. *O'Day, supra,* and *Commonwealth* v. *Blake,* 413 Mass. 823 (1992), to illustrate the kinds of facts that are lacking from the affidavit in this case. See *ante* at 442. To the extent that the affidavits in those cases established a stronger nexus between the defendants' drug selling and their residences than the affidavit in this case, neither case established the constitutional minimum for a finding of probable cause. "The fact that police never observed short-term visitors or other evidence of drug transactions at the defendant's residence, as in *Commonwealth* v. *O'Day, supra* at 302, is not fatal to probable cause, because the defendant's usual method of operation was to deliver drugs away from his apartment." *Commonwealth* v. *Hardy, supra.*

In my view, the warrant to search the defendant's apartment was supported by probable cause. Accordingly, I respectfully dissent.