## COMMONWEALTH vs. JOSHUA A. BOOKMAN.

No. 09-P-604.

Middlesex. June 14, 2010. - September 1, 2010.

Present: GREEN, DREBEN, & MILKEY, JJ.

*Constitutional Law,* Search and seizure, Probable cause, Confrontation of witnesses. *Search and Seizure,* Probable cause. *Probable Cause. Evidence,* Certificate of drug analysis.

A trial court judge erred in denying a criminal defendant's pretrial motion to suppress drugs found by police in a residential apartment following the defendant's arrest at another location, where, apart from their observation of a single occasion on which the defendant left the apartment to engage in drug transactions, the police lacked specific information from any quarter placing illegal drugs or transactions in the apartment. [549-551]

At a criminal trial, the admission in evidence of certificates of drug analysis in violation of the defendant's confrontation rights could not be said to be harmless beyond a reasonable doubt. [551]

INDICTMENTS found and returned in the Superior Court Department on July 25, 2006.

A pretrial motion to suppress evidence was heard by *Paul A. Chernoff,* J., and the cases were tried before *Thomas P. Billings,* J.

*Patricia Quintilian* for the defendant.

*Susanne R. Bines,* Assistant District Attorney, for the Commonwealth.

DREBEN, J. After being indicted on numerous charges, the defendant was convicted of distribution of cocaine, committing that violation in a school zone, and of possession with the intent to distribute cocaine. On appeal, he claims (1) the motion judge erred in not granting his motion to suppress drugs found in a residential apartment (a) because the police lacked probable cause to believe that cocaine and related paraphernalia would be found there, and (b) because there were no exigent cir-

cumstances justifying the warrantless search of the apartment; (2) there was insufficient evidence for the jury to find he had constructive possession of the cocaine within the apartment; and (3) the admission of the drug certificates was in violation of his rights under the confrontation clause.

1. *Motion to suppress.* We take our facts from the findings of the motion judge, supplemented by uncontradicted evidence from the hearing on the motion. On March 17, 2006, a confidential informant told the Somerville police department that an individual named John Holbrook would be participating in a drug transaction near a certain café and that a Ford Explorer with Massachusetts license plate TC7451 would be involved. Police went to the named café where they saw Holbrook, known to them as a drug user, leaving the Ford Explorer, which then drove away. When approached by police, Holbrook, although at first cooperating with the police, named the seller as Josh and then as George, gave them two bags of cocaine, soon ceased to cooperate and was arrested.

Records at the Registry of Motor Vehicles indicated that the vehicle was registered to Cynthia D'Angeli, who lived at 83 Partridge Avenue in Somerville. No sightings of the vehicle were made at this address, but the police observed the Ford Explorer in various locations in Somerville on four or five occasions.

Before April 14, 2006, another confidential informant told the police that an individual named Josh (the defendant) had a connection with the Ford Explorer, that he was selling cocaine to buyers in public places, and that he was living at 19 Central Street, Somerville, a multifamily apartment house, with his girl friend Karen. The informant and police arranged for a controlled buy from the defendant at a specific location, a senior housing facility. Although the police did not see the buy being made, they saw the Explorer parked outside that facility at the time it took place.

Also, before April 14, 2006, police saw the defendant on six to twelve occasions entering or leaving 19 Central Street, but attempts to follow him were fruitless as he appeared to engage in "counter-surveillance" measures. On one occasion, it appeared that the defendant was making contact with someone at

a parking lot at Rindge and Massachusetts Avenues in Cambridge which involved a quick interaction.

On April 14, 2006, two unmarked police cars followed the Explorer from 19 Central Street to a location where it pulled to the curb, and Manuel Bedugnis, a person known to the police as a drug user, entered the Explorer and after a short drive left the car. After one of the police officers approached Bedugnis, the latter threw two bags of cocaine on the ground and was arrested.

Other police officers continued to follow the Explorer and saw it stop at another location where another drug transaction appeared to take place. The Explorer stopped a third time, where a man, later identified as William Wadlund, leaned into the car holding cash and handed it to the defendant. As the police approached the car, the defendant grabbed the cash and threw the money onto the passenger seat and backed the Explorer into the police vehicle. Wadlund was arrested and two bags of cocaine similar to the ones taken from Bedugnis were found on his person. During his arrest, the defendant put up a struggle and claimed that his name was John Doe and that he was homeless. He said he wanted to be brought to the police station so that he could exercise his right to use a telephone.

No cocaine was found in the car. Its contents included straws and spoons with cocaine residue, keys in the ignition, a cellular telephone, $384.00, and identification with the name Joshua Bookman but with no address. Later during the booking process, the defendant revealed his name and gave 13 Central Street as his address.

While the defendant was being booked, at about 4:30 or 5:00 P.M., police went to 19 Central Street with the keys. They looked for unidentified apartments and went to the nearest unnamed apartment; it was on the first floor. The police knocked and, after receiving no answer, tried the keys. One fit. They unlocked the door and opened it. The defendant's girl friend and her daughter were in the apartment. Drugs were also seen in plain view in the living room.

In denying the motion to suppress and concluding that there was probable cause to believe that drugs were located at 19 Central Street, the judge relied on the following facts: the "information developed as to the defendant and the Explorer

since March 17th," "the information gathered from an informant," the "surveillance of the location preceding April 14," and the events of April 14 after the defendant left that address "under circumstances that one can infer that he left there with a quantity of drugs." Also important to the judge was the defendant's refusal to give his name or address, his driving a vehicle registered to another person at another address, the vehicle's presence outside the apartment building, and the defendant's "counter-surveillance-type driving" when leaving the residence. Moreover, it could be inferred that his insistence on using a telephone immediately after his arrest was an attempt to locate a person at the place the drugs were kept in order to dispose of them.

We consider *Commonwealth* v. *Smith*, 57 Mass. App. Ct. 907 (2003), and *Commonwealth* v. *Pina*, 453 Mass. 438 (2009), controlling here and that those cases preclude the finding of a sufficient nexus between the defendant's residence and the location of drugs. In *Smith*, there were three controlled buys from the defendant. After the first buy, the defendant was observed driving his vehicle back to his home, and before the last buy, he was seen driving from his home directly to the parking lot where the buy took place. There, we held that the observations by the police of the defendant driving, either to or from his house, without more, were insufficient to establish a connection between his home and the controlled buys. *Commonwealth* v. *Smith*, *supra* at 908.

Similarly in *Pina*, the police orchestrated a controlled purchase of cocaine from the defendant. Police had observed the defendant leave his apartment and drive directly to the location where the informant had been instructed to proceed and where the buy was completed. In addition to that information, the affidavit in support of the warrant indicated that the affiant had received extensive training and experience in narcotics distribution. The affiant explained that it is common for drug distributors "to assign unique meeting and delivery locations . . . ." *Commonwealth* v. *Pina*, *supra* at 440. Such variations "make[] it difficult for police to establish set patterns and locations for the deliveries and allow[] drug sales to be conducted away from a dealer's principal residence, where narcotics intended for distribution are concealed." *Ibid.*

The information that a defendant's actions may be consistent with a known type of drug delivery service without more does not create a sufficient probability that this defendant kept drugs at his home. "When that location is a residence, there must be specific information in the affidavit, and reasonable inferences a magistrate may draw, to provide 'a sufficient nexus between the defendant's drug-selling activity and his residence to establish probable cause to search the residence.' " *Id.* at 440-441, quoting from *Commonwealth* v. *O'Day,* 440 Mass. 296, 304 (2003). That a person is guilty of drug offenses does not necessarily constitute probable cause to search his residence. Nor does the fact that a defendant drives from his home to the location of a drug transaction with no other facts connecting the residence to drug sales establish probable cause. Pointing out that the only particularized information in the affidavit connecting the defendant's observed drug activity with his apartment was a single observation of the defendant driving from the apartment to the place of sale, the *Pina* court held the affidavit insufficient.[1] *Id.* at 442. See *Commonwealth* v. *Medina,* 453 Mass. 1011 (2009). Compare *Commonwealth* v. *Rodriguez,* 75 Mass. App. Ct. 290, 298 (2009) (the fact that the defendant possessed more cocaine on his person packaged for sale provided the additional evidence necessary to establish probable cause to search the defendant's home).

In the present case, there was only one occasion, April 14, 2006, that the defendant was seen leaving his residence and engaging in two or possibly three drug transactions.[2] That he hid his name and address and tried not to be followed is consistent with his criminal activity; it does not indicate a nexus of drugs to the apartment. The purpose of his request for a telephone call is unclear — he may have intended to call his lawyer. In any event, even if he wanted to have someone dispose of the drugs, his desire to use the telephone does not suggest the location of the drugs. Notably absent is any specific information from any

---

[1]A further concern of the *Pina* court was that the sale occurred three days before the application for the warrant. *Commonwealth* v. *Pina, supra* at 442.

[2]In addition, the police on another occasion saw the defendant leave 19 Central Street and go to a parking lot at Rindge and Massachusetts Avenue in Cambridge, where he had an unexplained "quick interaction" with an unknown individual.

quarter placing illegal drugs or drug transactions in the apartment. See *Commonwealth* v. *Pina, supra* at 441.

As there was no probable cause to search the apartment for any drugs related to this defendant,[3] we need not reach the closer questions whether exigent circumstances existed to enter the apartment or whether there was sufficient evidence to find that the defendant had constructive possession of the drugs in the apartment. The evidence of those drugs was derived entirely from the illegal entry. The motion to suppress should have been allowed.

2. *Melendez-Diaz problem.* The defendant's contention that his confrontation rights were violated by the admission of the drug certificates is supported by the recent cases of *Commonwealth* v. *Vasquez,* 456 Mass. 350 (2010), and *Commonwealth* v. *Charles,* 456 Mass. 378 (2010).

Those cases require that the standard of review for matters tried during the period between the decision of *Commonwealth* v. *Verde,* 444 Mass. 279 (2005), and *Melendez-Diaz* v. *Massachusetts,* 129 S. Ct. 2527 (2009), be whether the admission of drug certificates at trial was harmless beyond a reasonable doubt. We cannot so find in this case. The evidence as to the content of the substances involved, other than the certificates, is similar to the evidence in the *Vasquez* and *Charles* cases. In each of those cases the Supreme Judicial Court held the admission of the certificates was not harmless beyond a reasonable doubt.

Accordingly, the judgments are reversed, the verdicts are set aside, and the matter is remanded to the Superior Court for a new trial consistent with this decision.

*So ordered.*

---

[3]There were other defendants. See *Commonwealth* v. *Ruiz, post* 1120 (2010).