NOTICE:  Summary decisions issued by the Appeals Court pursuant to M.A.C. Rule 23.0, as appearing in 97 Mass. App. Ct. 1017 (2020) (formerly known as rule 1:28, as amended by 73 Mass. App. Ct. 1001 [2009]), are primarily directed to the parties and, therefore, may not fully address the facts of the case or the panel's decisional rationale.  Moreover, such decisions are not circulated to the entire court and, therefore, represent only the views of the panel that decided the case. A summary decision pursuant to rule 23.0 or rule 1:28 issued after February 25, 2008, may be cited for its persuasive value but, because of the limitations noted above, not as binding precedent.  See Chace v. Curran, 71 Mass. App. Ct. 258, 260 n.4 (2008).

COMMONWEALTH OF MASSACHUSETTS

APPEALS COURT

22-P-991

COMMONWEALTH

vs.

PETER AKARA.

MEMORANDUM AND ORDER PURSUANT TO RULE 23.0

Following a jury-waived trial in Superior Court, the defendant was convicted of trafficking a class B substance in an amount over thirty-six grams.  The conviction was based on cocaine, a scale, and over $59,000 in cash discovered at the defendant's Roslindale residence during the execution of a search warrant.  On appeal, the defendant raises multiple claims of error, most of which relate to assertions that the police might have obtained the search warrant based on an affidavit that contained fabrications.  We affirm.

Background.  The search warrant affidavit was signed by Boston police officer Robert England, a member of the "Drug Control Unit" (DCU).  It relies in pertinent part on information provided by a confidential informant referred to as "Randall,"

and on three controlled buys of cocaine that Randall made from the defendant. According to the affidavit, Randall had provided England "and other members of the DCU with reliable information in the past which has resulted in the purchase of illegal narcotics by undercover police officers in several of these investigations." Randall told police that that a Black male was operating a narcotics delivery service in and around West Roxbury and Roslindale. He reported that he would reach the person by calling him using a specified phone number and that the person would deliver the drugs using a Blue Toyota Avalon that had a Massachusetts license plate 555SS1. The police knew that the car was registered to the defendant's mother at 133 Cornell Street in Roslindale. They showed a photograph of the defendant to Randall, who identified the person shown in the photograph as the one who would sell him drugs.

Based on this information, the police used Randall to set up three controlled buys using customary protocols. Each controlled buy followed the same pattern: after Randall contacted the defendant by calling the referenced phone number, the defendant would leave 133 Cornell Street and drive in the Toyota Avalon to an agreed-upon location where he sold Randall cocaine in exchange for money. Although the descriptions of the controlled buys were very specific in some respects, they were general in others. Thus, for example, the affidavit did not set

2

forth the specific locations of the controlled buys, and it described their respective dates as follows: "[w]ithin the last several weeks [of September 20, 2018, the date the affidavit was signed], "[w]ithin the last week or so," and "[w]ithin the last seventy-two hours." The affidavit explained that any vagueness as to such points was designed to protect Randall's identity.

A clerk-magistrate determined that England's affidavit supplied probable cause to search the defendant's person, the Toyota Avalon, and the residence at 133 Cornell Street, and issued three search warrants (one for each). The police executed the warrants the following day (September 21, 2018). On the defendant's person, the police discovered a cell phone and a set of keys that included keys to the Avalon, his bedroom, and two safes. As noted, inside the residence, the police found cocaine, a scale, and over $59,000 in cash. They also found a second cell phone -- this one with a broken screen -- on a couch in the living room.

The defendant was indicted for trafficking a class B substance based on the evidence found inside his residence. He was not charged with possessing or distributing the cocaine sold during the controlled buys. Neither Randall nor England were called to testify at his trial. The defendant represented himself at trial, and during his cross-examination of one of the officers who executed the search warrant, he asked "[d]id you or

3

any of the officers plant the drugs?"  The officer answered
"no."

Both before and after trial, the defendant pursued a series
of motions that related to whether Randall or England might have
fabricated information included in the search warrant affidavit
regarding the controlled buys.  Indeed, the defendant maintained
that Randall may not even have existed.  Each of these motions
was denied, in pertinent part, and at trial, the defendant was
not allowed to pursue cross-examination regarding the search
warrant affidavit.  The details regarding the defendant's
efforts and claims of error are discussed below.

Discussion.  The evidence of trafficking cocaine found
inside the defendant's residence was extremely strong.
Unsurprisingly, he focused his efforts on seeking to suppress
that evidence.  However, because the search was done pursuant to
a warrant, the defendant bore the burden of demonstrating the
invalidity of the warrant.  See Commonwealth v. Bond, 375 Mass.
201, 210 (1978).  To the extent that the defendant argued that
the search warrant affidavit failed to establish probable cause
that evidence of a crime would be found inside his residence,
our review is confined to the information contained within the
four corners of the affidavit submitted in support of the
application.  See Commonwealth v. O'Day, 440 Mass. 296, 297
(2003).  Here, Officer England's affidavit "contain[ed] facts

4

sufficient to demonstrate that there is probable cause to believe that drugs, or related evidence, will be found at the location to be searched."  Commonwealth v. Lewis, 103 Mass. App. Ct. 61, 63 (2023), quoting Commonwealth v. Pina, 453 Mass. 438, 440 (2009).  There also was "specific information in the affidavit, and reasonable inferences a magistrate may draw, to provide 'a sufficient nexus between the defendant's drug-selling activity and his residence.'"  Lewis, supra, quoting Pina, supra at 440-441.  Nothing more was required.  Accordingly, the defendant's motion to suppress the fruits of the search was properly denied.

The defendant's other motions all relate to his efforts to claim that key averments in England's affidavit may have been fabricated.  As one such effort, the defendant requested a hearing pursuant to Franks v. Delaware, 438 U.S. 154 (1978), and Commonwealth v. Amral, 407 Mass. 511 (1990).  To obtain a Franks/Amral hearing, a defendant must make "a substantial preliminary showing" that the affiant either intentionally or recklessly made materially false statements in the affidavit. Franks, 438 U.S. at 170.  See also Amral, 407 Mass. at 522 (in camera hearing required only "where the defendant by affidavit asserts facts which cast a reasonable doubt on the veracity of material representations made by the affiant concerning a confidential informant").  Other than his own general denial

5

that he had sold cocaine in the Boston area during the relevant time period, the defendant provided no support for his claim that Officer England had included a misstatement in his affidavit, much less a material falsehood.  This being the case, the judge who denied the defendant's motion for a Franks/Amral hearing did not abuse his discretion in doing so.

For similar reasons, the defendant's other related efforts also fail.  In an effort to obtain information that might support his request for a Franks/Amral hearing, the defendant filed a pretrial "Motion Seeking Discovery Pertaining to Alleged 'Controlled Buys.'"  This was a motion seeking discretionary discovery pursuant to Mass. R. Crim. P. 14 (a) (2), as appearing in 442 Mass. 1518 (2004).[1]  Citing to Commonwealth v. John, 36 Mass. App. Ct. 702, 705 (1994), the judge denied that motion after concluding that the defendant had not established by affidavit "facts which cast a reasonable doubt on the veracity of material representations made by the affiant concerning a confidential informant" (citation omitted).  We recognize that

---

[1] We pause to note that the Commonwealth has an affirmative obligation to disclose exculpatory information in its possession as part of its mandatory automatic discovery obligations.  See Mass. R. Crim. P. 14 (a) (1), as appearing in 442 Mass. 1518 (2004).  Thus, for example, if counsel had reason to doubt that the controlled buys had taken place, he or she would have a duty to volunteer such information to the defense and potentially be subject to discipline for not doing so.

6

the defendant submitted an affidavit that included his general denial that he had sold drugs in Boston during the period in question. However, "[t]he judge was not required to credit the affidavit, even if undisputed." Commonwealth v. Dubois, 451 Mass. 20, 29 (2008). We conclude that the judge did not abuse her discretion in denying the defendant's discovery motion.[2]

The defendant seeks to make much of the fact that during the hearing on his discovery motion, the judge who ultimately denied that motion commented that defense counsel had "given [her] some basis for being skeptical about the veracity of th[e] search warrant." It bears noting that the judge made that comment in the midst of her trying to broker an agreement in which the Commonwealth would turn over something to the defendant to demonstrate that the controlled buys occurred. In any event, the judge's passing comment that there was a reason for skepticism is not supported by the arguments that the

---

[2] To be clear, we agree with the defendant that the Commonwealth could have provided some discovery responsive to the defendant's motion without impinging on the informant's privilege. However, given that the search warrant enjoyed a presumption of validity, the mere possibility that the requested discovery might be helpful to support a Franks/Amral hearing is not enough to entitle the defendant to pursue it. See Commonwealth v. Whitfield, 492 Mass. 61, 73 (2023), citing John, 36 Mass. App. Ct. at 706. Cf. Commonwealth v. Cuffee, 492 Mass. 25, 29-31 (2023) (even though defendant need not prove selective enforcement in order to obtain discovery to try to support such claim, there still must be "an initial showing of selective enforcement sufficient to order discretionary discovery").

7

defendant had presented to her, as the judge herself apparently came to conclude by the time she denied the motion. We turn to reviewing the defendant's claims on this in some detail.

In asserting that there was reason to doubt England's veracity, the defendant focused primarily on an omission in his affidavit. It is undisputed that during the relevant period, police were aware that the defendant was subject to global positioning system (GPS) monitoring. As a result, as the defendant pointed out, England theoretically could have strengthened his affidavit by cross-referencing the defendant's GPS data against the locations of the controlled buys during the precise times. The defendant suggests that the affidavit's silence on this issue is telling. We are unpersuaded. For one thing, such cross-referencing would have added significant value only to the extent that the specific locations and timing of the controlled buys were revealed, and the Commonwealth had good reason to want to withhold that information given that it could have revealed the identity of Randall. For another, England's affidavit was readily sufficient without any reliance on GPS data. See Lewis, 103 Mass. App. Ct. at 65 (rejecting similar argument because "question is ultimately not whether the affidavit might have been made stronger [had it included certain

8

information], but whether it was sufficient to establish probable cause to search [defendant's residence]").[3]

As noted, England declined to identify Randall in his affidavit, asserting the long-recognized informant privilege. See Commonwealth v. Whitfield, 492 Mass. 61, 68-69 (2023). The defendant moved for disclosure of Randall's identity, but failed to make a preliminary showing of how this would be relevant and material to his defense (in circumstances where the defendant was not being charged for possession or distribution of the cocaine involved in the controlled buys). See id. at 71, quoting Commonwealth v. Dias, 451 Mass. 463, 469 (2008) ("defendant must make 'some offering' so that the judge 'may assess the materiality and relevancy of the disclosure to the defense'"). The mere possibility that disclosure of the identity of the informant might lead to information that could

---

[3] The other argument that the defendant made at the hearing on his discovery motion was even weaker. He pointed to a photograph of one of the two cell phones found during the search -- the one with the broken screen -- that indicated that that phone was associated with a phone number different than the one that Randall identified as the one that he used to contact the defendant. That fact alone provides no reason to believe that anything in the affidavit was fabricated; indeed, the fact that the defendant had more than one cell phone was, if anything, inculpatory. In his appellate brief, the defendant claims that neither of the two phones found upon the execution of the search warrants matched the phone number that Randall reportedly used to contact him. That assertion is simply not supported by the defendant's record citations or anything else appearing in the record before us.

be helpful in crafting a motion to suppress is not sufficient. Commonwealth v. Snyder, 413 Mass. 521, 532 (1992). The judge who denied the defendant's Motion for Disclosure of Informant did not abuse his discretion in doing so.

Nor has the defendant demonstrated error in the partial denial of the defendant's motion seeking the disclosure of any "promises, rewards, and inducements" made to Randall. The judge allowed that motion if the Commonwealth intended to call Randall as a witness but denied it otherwise. Especially where the affidavit turned on controlled buys that the police independently oversaw, the defendant has not shown how any benefits that Randall might have received would be relevant to the defendant's defenses at the trial at which Randall did not testify.

In a post-conviction motion, the defendant sought discovery to try to substantiate his unsubstantiated claim that the controlled buys never occurred. Unlike his pretrial motion for discovery, the post-conviction motion was carefully targeted so as not to impinge on police efforts to protect Randall's identity. Thus, for example, the motion sought such information as records of the field tests that had been used on the drugs sold during the controlled buys. To prevail on a post-conviction motion for discovery, a defendant needs to "make a sufficient showing that the discovery is reasonably likely to

10

uncover evidence that might warrant granting a new trial." Commonwealth v. Daniels, 445 Mass. 392, 407 (2005). The judge who denied this motion concluded that the defendant had not met this standard, characterizing the motion instead as "a long-shot hope of finding something that might help him on appeal, without any meaningful showing that exculpatory evidence exists and without making any creditable showing that he has a meritorious claim." This was not an abuse of discretion.

Finally, we discern no abuse of discretion in the allowance of the Commonwealth's Motion in Limine to Exclude Defendant From Referencing Information in Search Warrant Affidavit during the trial, or in the trial judge's preventing the defendant from cross-examining a police witness about such issues at trial.[4] Where the defendant was not being charged with the possession or distribution of the drugs that were the subject of the controlled buys, the defendant has not demonstrated how issues related to the controlled buys were relevant to the issues at trial.[5]

---

[4] We note that the Commonwealth did not call England to testify at trial, nor did the defendant.

[5] We recognize a police witness made a passing reference to the search warrant, which served to set the context of how the police came to discover the drugs for which the defendant was charged. But this did not sweep into the trial the issues the defendant sought to explore regarding alleged problems in the search warrant affidavit. This is particularly true given that this was a bench trial.

11

For the reasons set forth above, we affirm the judgment and the order denying the defendant's motion for post-conviction discovery.

So <u>ordered</u>.

By the Court (Wolohojian,
Milkey & D'Angelo, JJ.[6]),

Assistant Clerk

Entered:  January 26, 2024.

---

[6] The panelists are listed in order of seniority.