NOTICE:  Summary decisions issued by the Appeals Court pursuant to M.A.C. Rule 23.0, as appearing in 97 Mass. App. Ct. 1017 (2020) (formerly known as rule 1:28, as amended by 73 Mass. App. Ct. 1001 [2009]), are primarily directed to the parties and, therefore, may not fully address the facts of the case or the panel's decisional rationale.  Moreover, such decisions are not circulated to the entire court and, therefore, represent only the views of the panel that decided the case.  A summary decision pursuant to rule 23.0 or rule 1:28 issued after February 25, 2008, may be cited for its persuasive value but, because of the limitations noted above, not as binding precedent.  See Chace v. Curran, 71 Mass. App. Ct. 258, 260 n.4 (2008).

COMMONWEALTH OF MASSACHUSETTS

APPEALS COURT

23-P-288

COMMONWEALTH

vs.

DENNY GERMAN.

MEMORANDUM AND ORDER PURSUANT TO RULE 23.0

The defendant was charged with possession with intent to distribute a class B substance, cocaine, in violation of G. L. c. 94C, § 32A (a).  He filed a motion to suppress evidence seized pursuant to two search warrants that were executed in this case, one for his residence and one for a motor vehicle, and for a Franks hearing, see Franks v. Delaware, 438 U.S. 154, 155-156, (1978).  The judge allowed the motion to suppress with respect to the evidence seized during the search of the vehicle, but denied it with respect to the search of the residence.  The judge also denied the defendant's request for a Franks hearing, finding an insufficient basis to require one.  The defendant filed a motion to reconsider, which was denied.

Subsequently, the defendant pleaded guilty to the charge against him, and received a suspended sentence, while reserving his appellate rights with regard to the judge's decisions on the motion to suppress the evidence seized from the residence, and the request for a Franks hearing.  See Commonwealth v. Gomez, 480 Mass. 240, 252 (2018) (permitting conditional guilty plea with consent of Commonwealth and court).

The affidavits in support of each of the two warrants were written by the same affiant, Detective Stephen Emery of the Lynn police department.  Each was based entirely on information from confidential sources, and each referred to two controlled buys that occurred on undisclosed dates and times in the month of October 2020.  The affidavit in support of the warrant for the residence was prepared on October 19, 2020, while the affidavit in support of the warrant for the vehicle was prepared on October 21, 2020.

1.  Motion to suppress.  We turn first to the motion to suppress the evidence seized from the residence at 1 Chase Street, Apartment 1R, Lynn.  In determining whether the motion to suppress was properly denied, we are limited in examining the four corners of the search warrant affidavit.  See Commonwealth v. Canning, 471 Mass. 341, 348 (2015).

For a warrant to issue, the affidavit must demonstrate probable cause that items related to the criminal activity under investigation will be found in the place to be searched at the time the search warrant issues.  See Commonwealth v. Donahue, 430 Mass. 710, 711-712 (2000).  Because of the heightened constitutional protection provided to residences, when establishing a nexus between a suspected drug dealer and his residence, "police must provide 'particularized information based on police surveillance or otherwise, that would permit a reasonable inference that the defendant likely kept a supply of drugs' in the home."  Commonwealth v. Escalera, 462 Mass. 636, 643 (2012), quoting Commonwealth v. Pina, 453 Mass. 438, 442 (2009).  "[T]here must be specific information in the affidavit . . . to provide 'a sufficient nexus between the defendant's drug-selling activity and his residence to establish probable cause to search the residence.'"  Pina, supra at 440-441, quoting Commonwealth v. O'Day, 440 Mass. 296, 304 (2003).  A single trip by a defendant directly from his residence to the location where he sold drugs to an informant is insufficient to provide an adequate nexus between a defendant's criminal activity and his residence.  Pina, supra at 441, 442.

In his affidavit, the affiant states that "[d]uring the month of October 2020," the affiant "spoke with a confidential

3

source of information," abbreviated in the affidavit as CS, which abbreviation we will use as well. The affiant states that he knows "this person's name, date of birth, address and cell phone number. This person has provided information directly to this Officer as well as other Officers, and State Troopers."

The affidavit goes on to say,

> "During this initial conversation, the CS stated that the CS knew of an unidentified male only known as 'Mike' offering cocaine for sale in and around Lynn. CS provided the following phone number for Mike: [phone number]. CS described Mike a [sic] Hispanic male, approximately 5'9["], medium build, cornrows down to his neck, light-medium skinned. CS also provided intelligence that Mike is dealing out of 1 Chase St, Lynn, MA."

The affidavit then says that "[d]uring the month of October 2020," a controlled buy of cocaine by the CS was undertaken. The CS made contact with Mike via the phone number given by the CS, made arrangements to purchase an undisclosed amount of cocaine from Mike, and was directed to a location where other officers were able to set up surveillance. Surveillance was also set up on 1 Chase Street. Sergeant Avery observed a Hispanic man matching the description of Mike exit the rear door of Apartment 1R of 1 Chase Street and exit the rear of the building. The affidavit says that a surveilling officer was able to keep sight of Mike as he went from 1 Chase Street directly to the CS's location, making no stops or meeting anybody else along the way. The CS met with Mike and handed him

4

money given to him by the police, and in return received "the cocaine." "Surveillance was kept on Mike as he made his way directly back to 1 Chase St[.] where he was observed to go back inside by Sgt[.] Avery and Trooper Soldani."

The affidavit also recounts a second controlled buy "[d]uring the month of October 2020." This time, however, "Sgt[.] Clemens of [Massachusetts State police] observed a Hispanic male matching the description for Mike exit the rear door of apartment 1R of 1 Chase St[.] and exit the rear of the building." Again, a surveilling officer was able to keep sight of Mike as he made his way from 1 Chase Street "directly to the CS's location while making no stops or meeting with anybody else along the way." Again, the CS met with Mike, handed him money provided by the police, and in return received cocaine. The CS and Mike then went their separate ways. Surveillance was kept on Mike as he made his way directly back to 1 Chase Street, where he was observed going back inside by Detective Peter Panacopoulos.

As described above, a single trip directly from one's residence to a place where one sells drugs has been held insufficient to support a conclusion that drugs will be found in the house. Pina, 453 Mass. at 441, 442. In this case, however, the affidavit describes two such controlled buys in which the

5

defendant traveled directly from the house to the location of the sale.  We will assume, without deciding, that if the magistrate credited the affidavit, this provided probable cause to search the defendant's residence.

There is, however, a staleness problem with the information in the affidavit.  This warrant was sought on October 19.  The affiant does not say on what day these controlled buys took place.  Rather, the affiant asserts only that these buys took place "during the month of October 2020."  There is, therefore, ambiguity about the dates of the buys.  "The ambiguity . . . makes it proper to assume that the buy occurred on the most remote date described by that language."  Commonwealth v. Rice, 47 Mass. App. Ct. 586, 590 (1999).  We must therefore assume that the first controlled buy took place on October 1, and, although the second buy could have taken place the same day, we will assume it did not -- although nothing in the affidavit actually requires this -- and therefore, that it took place, at the earliest, on October 2.  This means that we must treat the controlled buys as having taken place on two consecutive days, and the affidavit application as having been sought seventeen days after the second controlled buy.

"Probable cause to search a particular location for contraband requires a timely, as well as a substantial, nexus to

6

the illegal activity."  Pina, 453 Mass. at 442.  In Pina, although the court did not rest on this alone, the court said, "The lapse of time between th[e] observation and the application for the search warrant (three days) raises further concerns." Id.

There is no bright line for when information like this about a residence becomes stale.  It depends on the circumstances of each case.  See Commonwealth v. Atchue, 393 Mass. 343, 349 (1984).  We find some guidance, however, in Commonwealth v. Malone, 24 Mass. App. Ct. 70 (1987).  In that case, a search warrant was sought on April 19, 1985, for an apartment of the defendant from which she had been arrested selling drugs over a year before.  Id. at 71.  According to the affidavit, "'On or about the 25th to the 29th of March 1985,' an informant attempted to buy cocaine at the defendant's apartment."  Id.  The informant was allowed in by a woman who said she was the defendant's sister.  Id.  The informant asked about buying cocaine and was told it would be there in a while, and while in the apartment, the informant observed a white powder, which the woman described as only a cutting agent.  Id. The court concluded that it was a reasonable inference from the sister's statement that drugs would be found in the apartment within a short time after the informant's visit.  Malone, 24

7

Mass. App. Ct. at 73. However, the lapse of at least twenty-one days between that observation and the date on which the warrant was sought meant the affidavit was insufficient to support a finding of probable cause on the date the affidavit was submitted. Id. at 73-74. We think that the two and one-half weeks that passed between the controlled buy and the application for the warrant in this case is not meaningfully distinguishable from the three weeks at issue in Malone. Consequently, we think the information in the affidavit was stale when it was submitted, and therefore not sufficient to support the issuance of the warrant.

The Commonwealth points out that "[i]f an affidavit recites activity indicating protracted or continuous conduct, time is of less significance" (citation omitted). Commonwealth v. Vynorius, 369 Mass. 17, 25 (1975). There is at least one case in which a passage of two weeks was not sufficient to render the evidence stale because of continuous conduct. See Commonwealth v. Cruz, 430 Mass. 838, 843 (2000). But in that case, "the affidavit described six controlled purchases of increasing amounts of cocaine over a period of four weeks, and also asserted that plans were being made to buy more cocaine from the defendants in the future." Id. Given that, "[t]he magistrate reasonably could have inferred that the defendants were engaged

8

in ongoing, criminal activity to distribute cocaine." Id. In those circumstances, the court said that the affiant's information did not "grow stale" in the two weeks since the affidavit. Id.

Here, we do not have similar evidence of continuing activity. To be sure, according to the affidavit, two controlled buys took place from the defendant within the first two days of October 2020. But that is all the information we have. The affiant had never been inside the apartment, did not therefore describe anything about it or the presence of drugs within it, nor is there any other evidence from outside of these two days of an ongoing drug sale operation.

Consequently, because the nexus to the defendant's residence was not timely, we conclude that the search warrant should not have issued, and the motion to suppress should have been allowed.

2. Motion for a Franks hearing. For the sake of completeness, we address the defendant's second argument, that a Franks hearing should have been held. If we are incorrect about the motion to suppress, we conclude that the defendant was nonetheless entitled to a Franks hearing.

Under Franks v. Delaware, 438 U.S. 154, 155-156, (1978),

"where the defendant makes a substantial preliminary
showing that a false statement knowingly and intentionally,

9

or with reckless disregard for the truth, was included by the affiant in the warrant affidavit, and if the allegedly false statement is necessary to the finding of probable cause, the Fourth Amendment [to the United States Constitution] requires that a hearing be held at the defendant's request."

"Intentionally or recklessly omitted material may also form the basis for mounting [such] a challenge." Commonwealth v. Long, 454 Mass. 542, 552 (2009). To invoke Franks, the defendant must show that the false statement was necessary to the finding of probable cause, or that omission negated a finding of probable cause.

The defendant's primary argument is based on alleged inconsistencies between the search warrant affidavit supplied in obtaining the search warrant for the residence, and the affidavit submitted two days later in support of the search warrant for the vehicle.

The affidavit for the vehicle warrant is virtually identical, in its initial portions, to the affidavit in the residence case. It states, "During the month of October 2020, this Officer spoke with" a confidential source, this time referred to as a "confidential reliable source," for which it uses the initials "CRS," as we will, but says nothing about reliability, instead averring that "reliability can be furnished upon request." Identically to the residence affidavit, it then reads, "I know this person's name, date of birth, address and

10

cell phone number. This person has provided information directly to this Officer as well as other Officers, and State Troopers." It then says,

> "During this initial conversation, the CRS stated that the CRS knew of an unidentified male only known as 'Mike' offering cocaine for sale in and around Lynn. CRS provided the following phone number for Mike: [same phone number as that in the residence affidavit]. CRS described Mike a [sic] Hispanic male, approximately 5'9["], light-medium skinned. CRS also provided intelligence that Mike is dealing out of 1 Chase St[.], Lynn, MA."

The only difference between this and the description of CS in the residence affidavit is that CS was said to have included in his description of "Mike" the additional information that he was "medium build," with "cornrows down to his neck."

The vehicle affidavit describes the setup of a controlled buy "[d]uring the month of October 2020" almost identically to the way it was described in the residence affidavit, but states that "[s]urveillance observed MA REG 2XKM81 being operated by a single occupant who appeared to match the description of Mike. The CRS went to the MV [motor vehicle], met with Mike, handed him the money, and in return received the cocaine. The CRS and Mike then went their separate ways."

The vehicle affidavit then introduces someone it implies to be a second confidential source. It says,

> "During the month of October 2020, this Officer spoke with a confidential source of information who will be referred to as CS. I know this person's name, date of birth,

11

address and cell phone number. This person has provided information directly to this Officer as well as other Officers, and State Troopers. During this initial conversation, the CS stated that the CS knew of an unidentified male only known as 'Mike' offering cocaine for sale in and around Lynn. CS provided the following phone number for Mike: [same phone number]. CS described Mike a [sic] Hispanic male, approximately 5'9["], medium build, cornrows down to his neck, light-medium skinned. CS also provided intelligence that Mike is dealing out of 1 Chase St[.], Lynn, MA."

This paragraph appears to be cut and pasted from the residence affidavit. It even includes the same typographical error. This supports an inference that this "CS" is the same CS named in the residence affidavit.

The affidavits describe identically a controlled buy by CS, the second one described in the residence affidavit. But the vehicle affidavit has a different description than the residence affidavit of what happened after it. The residence affidavit says, "Surveillance was kept on Mike as he made his way directly back to 1 Chase St[.] where he was observed to go back inside by Det[.] Peter Panacopoulos." The vehicle affidavit, in contrast, says,

> "Surveillance was kept on Mike as he stopped at MA Reg 2XKM81 which was parked and unoccupied. Mike held something out and pointed it at the MV as if it was being unlocked. He then entered the passenger side of the MV and sat down inside. He appeared to manipulate some things in the front seat and then after approximately 1 minute he exited the MV [and] made his way directly back to 1 Chase St[.] where he was observed to go back inside by Det[.] Peter Panacopoulos."

12

Given that the last clause is identical to what was included in the residence affidavit, an inference is supported that this controlled buy is the second controlled buy mentioned in the residence affidavit.

The differences between these two affidavits raise a serious concern. It may be that there were three confidential sources and four controlled buys. And the identical passages may reflect a desire to avoid details about the confidential sources, not that the descriptions are of the same confidential source. But it is reasonable to assume that an officer seeking a warrant for a search of a residence or a vehicle would include in his affidavit all controlled buys made from the suspect. Certainly, in seeking a warrant for a residence, one would expect all controlled buys in which the defendant went directly from the residence to the drug deal to be included.

To begin with, then, the affidavits support an inference that the second controlled buy mentioned in each affidavit is the same one, and that the defendant did not proceed directly to the residence after the drug deal but stopped instead at the vehicle. If so, the description in the residence affidavit is inaccurate. Further, the omission from the residence affidavit of returning to the car, if it describes what actually happened, and of the vehicle affidavit's description of the first

13

controlled buy, in which the defendant arrived and departed in his vehicle, may paint a materially misleading picture of the role of the residence in the defendant's drug-dealing activity, indicating that, during the relevant time period, the defendant may not have been selling drugs from his residence.

Indeed, it may be that the two affidavits describe the same two controlled buys and that there was only a single confidential source. If that were true, then the description of the first controlled buy in each affidavit is utterly different from the description in the other. The differences in the affidavits certainly raise a sufficient issue to have required an evidentiary hearing under Franks.

There is also additional evidence showing that a Franks hearing was necessary. In an affidavit filed with the motion, and again filed with the motion for reconsideration, counsel asserted that he had visited and examined the premises at 1 Chase Street, Lynn, both interior and exterior, and had had the opportunity to examine Apartment 1R, both interior and immediate exterior. He asserted that it is physically impossible to see through the rear door of 1 Chase Street into the interior of the rear hallway to determine that someone has left Apartment 1R, unless one has their face pressed up to the beveled glass. There is a short distance between the door to Apartment 1R and

14

this back door with beveled glass, and he asserted that if one had one's face pressed against the glass, anyone exiting Apartment 1R would see them, and would get to the building's rear door before the person looking in had any time to leave or hide.  This, too, raises a question worthy of an evidentiary hearing under Franks.[1]

Because we think the failure to allow the motion for a Franks hearing was in error, were we to conclude that the evidence seized during the search of the residence need not be suppressed, we would vacate the order denying the Franks hearing, and remand for proceedings consistent with this memorandum and order.

Conclusion.  To the extent that the order on the defendant's motion denied the motion to suppress evidence seized from the residence, it is reversed, and the case is remanded to

---

[1] In support of the motion for reconsideration, the defendant submitted photographs of the rear of the building that appear to show the impossibility of seeing the exit of Apartment 1R from outside the rear of the building, except by being immediately close to that rear door.  He includes those photographs in his appendix, but, because the judge was not obligated to consider that new evidence on a motion for reconsideration, they play no role in our assessment.

the Superior Court for further proceedings not inconsistent with this memorandum and order.  The remainder of the order is affirmed.

So ordered.

By the Court (Rubin, Blake &
    Shin, JJ.[2]),

Clerk

Entered:  October 4, 2024.

---

[2] The panelists are listed in order of seniority.

16